## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAN MATOS RIVERA, | |
| *Plaintiff*, | Civil Case No. _____ |
| -against- | *Document Electronically Filed* |
| THE CITY OF NEW YORK, POLICE OFFICER GLORIA CEVALLOS, POLICE OFFICER MINATOR KRYEZIU, SERGEANT JORGE MALAVET, POLICE OFFICE RACQUEL PALMER, POLICE OFFICER JOHN DOE 1, AND POLICE OFFICER JOHN DOE 2, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| *Defendants*. | |

Adan Matos Rivera, by the undersigned attorneys, brings this action against the City of New York (the "City"), Police Officer Gloria Cevallos, Police Officer Minator Kryeziu, Sergeant Jorge Malavet, Police Officer Racquel Palmer, presently unidentified Police Officer John Doe 1, and presently unidentified Police Officer John Doe 2, alleging as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiff, Adan Matos Rivera, seeks damages to redress the deprivation, under color of state law, of rights secured to him under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and by state law.  On October 19, 2021, at approximately 5:15 PM, Plaintiff was falsely arrested with excessive force by Defendants, including but not limited to Police Officers Gloria Cevallos ("Cevallos"), Minator Kryeziu ("Kryeziu"), Racquel Palmer ("Palmer"), John Doe 1 ("Doe 1"), and John Doe 2 ("Doe 2"), along with Sergeant Jorge Malavet ("Malavet").  Furthermore, Defendants

subjected Plaintiff to false imprisonment, fabrication of evidence, malicious prosecution, and abuse of process.  As a result of the incident, Plaintiff suffered physical injury, mental anguish, loss of enjoyment of life, shame, humiliation, indignity, and damage to reputation, among other damages.

## JURISDICTION

2.      This action is brought pursuant to, *inter alia*, 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.  Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4), as this is a civil action arising under the Constitution and laws of the United States, in addition to supplemental jurisdiction over related state causes of action under 28 U.S.C. § 1367(a).  Jurisdiction is conferred upon this Court to enter declaratory relief under 28 U.S.C. §§ 2201 and 2202.

3.      On October 25, 2021, Plaintiff filed a Notice of Claim.  On September 29, 2022, he attended a hearing pursuant to N.Y. Gen. Mun. Law § 50-h.  Accordingly, the procedures specified by N.Y. Gen. Mun. Law §§ 50-e and 50-i are exhausted.

## VENUE

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because all of the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

## PARTIES

5.      Plaintiff Adan Matos Rivera, 27 years of age, was at all times relevant to this complaint a resident of the City of New York, Bronx County, in the State of New York.

6.      Defendant City is a municipal corporation, incorporated pursuant to the laws of the State of New York, which operates the New York City Police Department ("NYPD"), and as

2

such is the public employer of the Defendant officers.  The City is responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and is responsible for the appointment, training, supervision, discipline, retention, and conduct of all NYPD personnel as policymaker and employer under respondeat superior.  The City is responsible for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

7.      Defendant Gloria Cevallos, shield number 17457, was a NYPD Officer and, at all times relevant to this complaint, acted in that capacity as an agent and/or employee of Defendant City and within the scope of her employment.

8.      Defendant Minator Kryeziu, shield number 22590, was a NYPD Officer and, at all times relevant to this complaint, acted in that capacity as an agent and/or employee of Defendant City and within the scope of his employment.

9.      Defendant Jorge Malavet, shield number 4418, was a NYPD Officer and has since been promoted to Sergeant.  At all times relevant to this complaint, he acted in those capacities as an agent and/or employee of Defendant City and within the scope of his employment.

10.     Defendant Racquel Palmer, shield number 18798, was a NYPD Officer and, at all times relevant to this complaint, acted in that capacity as an agent and/or employee of Defendant City and within the scope of her employment.

11.     Defendant John Doe 1, shield number unknown, was a NYPD Officer and, at all times relevant to this complaint, acted in that capacity as an agent and/or employee of Defendant City and within the scope of his employment.

12.     Defendant John Doe 2, shield number unknown, was a NYPD Officer and, at all times relevant to this complaint, acted in that capacity as an agent and/or employee of Defendant City and within the scope of his employment.

3

13.     At all times relevant to this complaint, Defendant Officers were acting under the color of state and local law.  Defendant Officers are sued in their individual and official capacities.

## FACTUAL BACKGROUND

14.     All statements below are made based on personal knowledge of Plaintiff, his attorneys, video footage, medical records, and upon information and belief.

15.     On the afternoon of October 19, 2021, the Plaintiff, Adan Matos Rivera, was walking in his neighborhood, across the street from the home he shared with his mother.

16.     Outside the corner store at 902 Hunts Point Avenue, an unknown male initiated an altercation.  The stranger accosted Mr. Matos Rivera, knocked him to the ground, and held him down by his hair.  A crowd gathered and bystanders started to record the incident.  Video footage shows Mr. Matos Rivera trying to get up off the ground and avoiding escalating the situation.

17.     At approximately 5:15 PM, Defendants Cevallos and Kryeziu arrived at the scene and tried to handcuff Mr. Matos Rivera while he was still on the ground without first announcing themselves or asking any questions.  A confused Mr. Matos Rivera attempted to stand up from the sidewalk while Defendant Cevallos held his arms behind his back.  Defendant Kryeziu then grabbed him, slammed him to the ground, and punched him in the face at least three times.  As a result of this unprovoked attack, Mr. Matos Rivera lost consciousness and his face bled profusely.  He slumped onto the sidewalk.

18.     At no time did Defendant Cevallos intervene to stop Defendant Kryeziu from assaulting and battering Mr. Matos Rivera.  Defendants Cevallos and Kryeziu also ignored the cries of onlookers, who denounced the officers' violence.  They yelled at the defendant officers: "He was not fighting you!" and "You didn't have to do that."  Defendants Cevallos and Kryeziu

4

started to drag Mr. Matos Rivera's limp body towards a squad car, shouting at him to "get up" even though he was clearly unconscious. At this juncture, four additional NYPD personnel, Defendants Malavet, Palmer, Doe 1, and Doe 2, arrived and joined Defendants Cevallos and Kryeziu in dragging Mr. Matos Rivera's body, causing further injuries. He was moved a considerable distance to a nearby intersection and loaded into a squad car.

19.      Despite the assault by the Defendants, his numerous injuries, and a period of unconsciousness, Mr. Matos Rivera was not taken to a hospital for medical care. Instead, his first memory is waking up handcuffed to a cell in the 41st Precinct, where he was cursorily examined by an EMT. He had no memory of the assault. Mr. Matos Rivera experienced excruciating headaches and pain in his jaw, neck, knee, shoulders, and lower back.

20.      Following this false arrest and violent attack, Mr. Matos Rivera was wrongfully imprisoned and spent two nights in jail. When he asked why he was arrested, the police claimed that he had attempted to assault an officer. This specious claim, among others, was the basis of criminal complaints filed against Mr. Matos Rivera. On October 20, 2021, Mr. Matos Rivera was charged with resisting arrest, attempted assault, disorderly conduct, and harassment in Bronx Criminal Court. The same day, the U.S. Probation Officer requested an expedited warrant for Mr. Matos Rivera's arrest from the Southern District of New York for a violation of supervised release. Mr. Matos Rivera voluntarily surrendered himself to federal custody on October 22, 2021.

21.      However, Mr. Matos Rivera learned prior to his federal arraignment that a video of the incident was available. The video, attached to this Complaint as Exhibit A, unequivocally showed that the charges against Mr. Matos Rivera were false and that the Defendants violently attacked Mr. Matos Rivera and further injured him by dragging him and ignoring his medical

needs. After the Assistant United States Attorney assigned to his case viewed the video, the federal charge against Mr. Matos Rivera was dismissed on November 3, 2021 by consent of the parties. However, his conditions of supervision were modified for 90 days to impose a curfew from 9 p.m. to 7 a.m., enforced by location monitoring. Mr. Matos Rivera later accepted an adjournment in contemplation of dismissal of the state criminal charges on January 20, 2022.

22.     When Mr. Matos Rivera was released from police custody, he quickly sought medical treatment for his injuries. At Montefiore Hospital in New Rochelle and Medalliance Medical Health Services in the Bronx, Mr. Matos Rivera received treatment, an EEG, and CT scans. He required a neck brace for his injuries and attended physical therapy twice a week for several months.

23.     Mr. Matos Rivera experienced daily headaches as a result of the assault, as well as dizziness, confusion, and facial swelling. Mr. Matos Rivera also experienced severe pain in his jaw, neck, back, and both of his shoulders. His doctors attributed the shoulder pain to the fact that Mr. Matos Rivera was dragged by police officers along the street.

24.     In addition to his physical injuries, Mr. Matos Rivera was traumatized by the incident and suffers severe ongoing emotional distress as a result. Since the assault, he is unable to trust police officers and is afraid of any routine encounters with them. Unlike before the assault, he now avoids interacting with the police even if in need of assistance.

25.     After his release from custody, no representative from the NYPD or the City contacted Mr. Matos Rivera to ensure he received medical care for his serious injuries or to investigate the assault. To Mr. Matos Rivera's knowledge and belief, no investigation was conducted into the behavior of the Defendants despite the video of the assault being publicly posted and Mr. Matos Rivera sharing it with prosecutors. Mr. Matos Rivera fears that others will

be attacked by the Defendant officers and that no steps have been taken to protect other New
Yorkers.

26.     Mr. Matos Rivera's fear is reasonable and credible given the Defendants' history
of engaging in excessive force with impunity.  In particular, Defendant Kryeziu is a named
defendant in two recent lawsuits, both of which involve excessive force.[1]  He has also been the
subject of numerous civilian complaints.[2]  Of particular concern is a June 2019 complaint against
Kryeziu for using physical force, which was substantiated by the Civilian Complaint Review
Board ("CCRB"), an independent municipal agency that investigates complaints of NYPD
misconduct.[3]  As a result of its investigation, the CCRB recommended charges, which is the
most serious disciplinary recommendation the Board can make against an officer.[4]  Despite
Defendant Kryeziu's history of violence, which predates his assault upon Mr. Matos Rivera, the
NYPD has failed to take any meaningful corrective action to protect civilians.

27.     Further, Defendants Cevallos and Palmer also have histories of violence and other
misconduct.  Defendant Palmer is a named defendant in two recent lawsuits involving excessive
force and fabrication of evidence.[5]  Defendant Cevallos is named as a defendant in a recent
lawsuit alleging fabrication of the evidence supporting a charge of resisting arrest.[6]  She was also

---

[1]     *Harris-Wright v. City of New York*, 807520/2022E (N.Y. Sup. Ct. May 17, 2022) (ongoing); *Fuentes v. City of New York*, 022318/2020E (N.Y. Sup. Ct. Feb. 20, 2020) (settled).

[2]     *Minator B. Kryeziu*, 50-A.ORG, https://www.50-a.org/officer/7721 (last visited Jan. 16, 2023).

[3]     *Complaint from June 3, 2019*, 50-A.ORG, https://www.50-a.org/complaint/201904870 (last visited Jan. 16, 2023).

[4]     *Police Discipline*, CIVILIAN COMPLAINT REV. BD., https://www.nyc.gov/site/ccrb/prosecution/police-discipline.page (last visited Jan. 16, 2023).

[5]     *Gorqaj v. City of New York*, No. 21-CV-2462 (S.D.N.Y. Mar. 22, 2021) (settled); *Marble v. City of New York*, 31609/2020E (N.Y. Sup. Ct. Oct. 9, 2020) (ongoing).

[6]     *Walters v. Harris*, 29740/2019E (N.Y. Sup. Ct. Aug. 20, 2019) (ongoing).

the subject of a recent civilian complaint for "forcible removal to hospital," which was substantiated by the CCRB.[7]  Despite these charges, Defendant Cevallos serves as a "Neighborhood Coordination Officer" for the 41st Precinct.  In that role, she "engag[es] with local community members" and acts as a "local problem solver[.]"[8]  Instead of reprimanding Defendants Cevallos and Palmer, the NYPD has retained and promoted them, enabling the conduct leading to Mr. Matos Rivera's injuries.

28.     Defendants' misconduct is part of an extensively documented pattern of excessive force used by NYPD officers.  According to the CCRB's Data Transparency Initiative, the agency received 1400 complaints alleging excessive force in just 2021—the year that Mr. Matos Rivera was assaulted.[9]  A non-exhaustive list of widely publicized recent incidents includes:

- An officer used both arms to aggressively push a 22-year-old peaceful protester into a street curb, causing a concussion.[10]

- A plainclothes officer punched a 16-year-old boy and knocked him unconscious during the course of an arrest.[11]

---

[7]     *Complaint from April 4, 2021*, 50-A.ORG, https://www.50-a.org/complaint/202102359 (last visited Jan. 16, 2023).

[8]     *41st Precinct*, NYPD, https://www.nyc.gov/site/nypd/bureaus/patrol/precincts/41st-precinct.page (last visited Jan. 16, 2023).

[9]     Data Transparency Initiative, *Complaints*, CIVILIAN COMPLAINT REV. BD., https://www.nyc.gov/site/ccrb/policy/data-transparency-initiative-complaints.page#complaints (last visited Jan. 16, 2023).

[10]    Reuven Blau & Yoav Gonen, *City to Pay Protester Shoved by Cop $387K, Officer Contributes $3000*, THE CITY (Feb. 1, 2022), https://www.thecity.nyc/2022/1/31/22911692/city-to-pay-protester-shoved-by-cop-387k-officer-contributes-3000.

[11]    Nathan Tempey, *City Sued for $95 Million After Plainclothes Cop Knocks Teen Unconscious*, GOTHAMIST (June 9, 2015), https://gothamist.com/news/city-sued-for-95-million-after-plainclothes-cop-knocks-teen-unconscious.

- Officers bashed in a man's car window with a baton, then broke his ankle dragging him from the vehicle and charged him with resisting arrest; charges were dropped.[12]

- An officer punched a woman in the face and gouged out her eye with a key, resulting in the need for a prosthetic eye.[13]

- Officers used excessive force during arrest, putting a man into a chokehold and tasing him, which resulted in burns, cuts, and bruises all over his body.[14]

According to an investigative report by *ProPublica*, while "New York City has paid more than $1 billion over the past five years to settle lawsuits against the NYPD . . . [a]gain and again, the officers faced minimal or no discipline."[15]  The prevalence of such incidents shows the City's constructive knowledge of, and willful indifference to, the widespread and egregious misconduct of NYPD officers.

### FIRST CAUSE OF ACTION: *MONELL* CLAIM UNDER 42 U.S.C. § 1983 (AGAINST DEFENDANT CITY)

29.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

30.     Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, when they carried out the acts described in this complaint.

---

[12]   Mike Hayes, *New York City Paid an NBA Star Millions After an NYPD Officer Broke His Leg. The Officer Paid Little Price*, PROPUBLICA (Jan. 12, 2021), https://www.propublica.org/article/new-york-city-paid-an-nba-star-millions-after-an-nypd-officer-broke-his-leg.-the-officer-paid-little-price.

[13]   John Annese & Rocco Parascandola, *Bronx Woman Who Accused Cop of Ripping Her Eye Out Gets $1.25 Million Settlement from City*, N.Y. DAILY NEWS (Sept. 10, 2020), https://www.nydailynews.com/new-york/nyc-crime/ny-bronx-woman-eye-gouged-out-settlement-20200910-vszhxqjqobgl5k3z63oynabvmi-story.html.

[14]   Rocco Parascandola & John Annese, *NYC to Pay More than $500G in NYPD Chokehold and Taser Case*, N.Y. DAILY NEWS (Jul. 21, 2021), https://www.nydailynews.com/new-york/nyc-crime/ny-half-million-dollar-settlement-nypd-chokehold-taser-20210721-qwx4pzyydnddvni52f4rk3nro4-story.html.

[15]   Hayes, *supra* note 12.

31.     Defendant City engages in a policy-in-practice, custom, usage, or practice of subjecting citizens to excessive force.  The NYPD's practice and custom of officers unlawfully using force is so persistent, widespread, and pervasive as to constitute a custom or usage and imply the constructive knowledge or acquiescence of the City and its policymakers.  The City's failure to take corrective action, through training, enhanced supervision, diligent investigation, or meaningful punishment—in particular, disciplinary action that would deter future misconduct—constitutes deliberate indifference to the violations.

32.     Additionally, the City knew, or should have known, the propensity of Defendants Kryeziu, Cevallos, and Palmer to engage in the type of misconduct alleged by Plaintiff.  Despite the City's knowledge of past misconduct by Defendants Kryeziu, Cevallos, and Palmer, the City and the NYPD failed to take sufficient disciplinary action to deter them and protect civilians from their violent behavior.  The City's failure to train, supervise, investigate, and discipline NYPD officers such as Defendants Kryeziu, Cevallos, and Palmer amounts to deliberate indifference to the constitutional violations committed by the NYPD against individuals, including Mr. Matos Rivera.

33.     Defendant City's improper and inadequate policies, customs, usages, practices, rules, and/or regulations were the direct and proximate cause of violations of Plaintiff's civil rights.

34.     As a result of the violation of his civil rights, Plaintiff suffered significant physical and emotional pain, trauma, and humiliation.

35.     Plaintiff seeks compensatory damages and injunctive relief from Defendant City.

**SECOND CAUSE OF ACTION: EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**
**(AGAINST DEFENDANTS KRYEZIU, CEVALLOS, MALAVET, PALMER, DOE 1,**
**AND DOE 2)**

36.  Plaintiff incorporates by reference the allegations in all preceding paragraphs.

37.  The level of force applied by Defendants Kryeziu and Cevallos to Plaintiff was objectively unreasonable, excessive, and unjustified.

38.  As Defendant Cevallos held Plaintiff's arms behind his back, Defendant Kryeziu brutally grabbed him, slammed him to the ground, and punched him repeatedly, causing him to lose consciousness and bleed profusely.

39.  Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 dragged Plaintiff's body, causing further extensive injuries.

40.  As a result of Defendants' actions, Plaintiff suffered significant physical and emotional pain, trauma, humiliation, and deprivation of his constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

41.  Plaintiff seeks compensatory and punitive damages from Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, and injunctive relief from Defendant City.

**THIRD CAUSE OF ACTION: STATE LAW ASSAULT**
**(AGAINST ALL DEFENDANTS)**

42.  Plaintiff incorporates by reference the allegations in all preceding paragraphs.

43.  Defendants Kryeziu and Cevallos intentionally placed Plaintiff in apprehension of imminent harmful or offensive contact without his consent immediately before his arrest. Defendants Palmer, Malavet, Doe 1, and Doe 2 placed Plaintiff in apprehension of imminent harmful or offensive contact without his consent before dragging his body.

44.     Defendants Kryeziu, Cevallos, Palmer, Malavet, Doe 1, and Doe 2 were acting in their official capacity as NYPD officers when they assaulted Mr. Matos Rivera, and Defendant City, as the employer of Defendants Kryeziu, Cevallos, Palmer, Malavet, Doe 1, and Doe 2, is liable for their actions under the doctrine of respondeat superior.

45.     As a result of Defendants' actions, Plaintiff suffered significant emotional pain, trauma, and humiliation.

46.     Plaintiff seeks compensatory and punitive damages from Defendants Kryeziu and Cevallos, and compensatory damages and injunctive relief from Defendant City.

### FOURTH CAUSE OF ACTION: STATE LAW BATTERY
### (AGAINST ALL DEFENDANTS)

47.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

48.     Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 intentionally touched, grabbed, punched, handcuffed, and seized Mr. Matos Rivera in a harmful and offensive manner.  Plaintiff did not consent to the illegal touching, nor was the touching privileged by law.

49.     Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 were acting in their official capacity as NYPD officers when they battered Mr. Matos Rivera, and Defendant City, as the employer of Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, is liable for their actions under the doctrine of respondeat superior.

50.     As a result of Defendants' actions, Plaintiff suffered significant physical and emotional pain, trauma, and humiliation.

51.     Plaintiff seeks compensatory and punitive damages from Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, and compensatory damages and injunctive relief from Defendant City.

## FIFTH CAUSE OF ACTION: FALSE ARREST UNDER 42 U.S.C. § 1983 (AGAINST DEFENDANTS KRYEZIU, CEVALLOS, MALAVET, PALMER, DOE 1, AND DOE 2)

52.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

53.     Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 had no probable cause to arrest Mr. Matos Rivera, nor justification to detain him.  Plaintiff was aware of his arrest and did not consent to it.  The detention was not privileged or authorized by any warrant, order, or other legal right.

54.     As a result of Defendants' actions, Plaintiff suffered loss of liberty, emotional pain, trauma, humiliation, and deprivation of his constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

55.     Plaintiff seeks compensatory and punitive damages from Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, and injunctive relief from Defendant City.

## SIXTH CAUSE OF ACTION: STATE LAW FALSE ARREST AND IMPRISONMENT (AGAINST ALL DEFENDANTS)

56.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

57.     Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 had no probable cause to arrest Mr. Matos Rivera, nor justification to detain him.  Plaintiff was aware of his arrest and did not consent to it.  The detention was not privileged or authorized by any warrant, order, or other legal right.

58.     Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 were acting in their official capacity as NYPD officers when they falsely arrested and imprisoned Mr. Matos Rivera, and Defendant City, as the employer of Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, is liable for their actions under the doctrine of respondeat superior.

59.     As a result of Defendants' actions, Plaintiff suffered loss of liberty, emotional pain, trauma, and humiliation.

60.     Plaintiff seeks compensatory and punitive damages from Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, and compensatory damages and injunctive relief from the City.

**SEVENTH CAUSE OF ACTION: FABRICATION OF EVIDENCE UNDER
42 U.S.C. § 1983
(AGAINST DEFENDANT CEVALLOS)**

61.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

62.     Defendant Cevallos fabricated information likely to influence a jury's verdict and forwarded it to prosecutors, who filed a complaint in Bronx Criminal Court.  Plaintiff was arraigned in state and federal court based on the fabricated information and suffered harm to his reputation.

63.     As a result of Defendant's actions, Plaintiff suffered emotional pain, trauma, humiliation, and deprivation of his constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution.

64.     Plaintiff seeks compensatory and punitive damages from Defendant Cevallos, and injunctive relief from Defendant City.

**EIGHTH CAUSE OF ACTION: MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983
(AGAINST DEFENDANT CEVALLOS)**

65.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

66.     The fabricated information provided by Defendant Cevallos caused Plaintiff to be charged with a violation of supervised release, which was later dismissed after his arraignment. Officer Cevallos did not have probable cause to forward fabricated information to the U.S.

Probation Officer and did so with actual malice to cover up her own misconduct in arresting Plaintiff.

67.     As a result of Defendant's actions, Plaintiff suffered emotional pain, trauma, humiliation, and deprivation of his constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution.

68.     Plaintiff seeks compensatory and punitive damages from Defendant Cevallos, and injunctive relief from Defendant City.

## NINTH CAUSE OF ACTION: STATE LAW MALICIOUS PROSECUTION (AGAINST DEFENDANTS CEVALLOS AND CITY)

69.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

70.     The fabricated information provided by Defendant Cevallos caused Plaintiff to be charged with a violation of supervised release, which was later dismissed after his arraignment. Defendant Cevallos did not have probable cause to forward fabricated information to the U.S. Probation Officer and did so with actual malice to cover up Defendant's misconduct in arresting Plaintiff.

71.     Defendant Cevallos was acting in her official capacity as a NYPD officer when she subjected Mr. Matos Rivera to malicious prosecution, and Defendant City, as the employer of Defendant Cevallos, is liable for her actions under the doctrine of respondeat superior.

72.     As a result of Defendant's actions, Plaintiff suffered emotional pain, trauma, and humiliation.

73.     Plaintiff seeks compensatory and punitive damages from Defendant Cevallos, and compensatory damages and injunctive relief from Defendant City.

## TENTH CAUSE OF ACTION: STATE LAW ABUSE OF PROCESS
## (AGAINST DEFENDANTS CEVALLOS AND CITY)

74.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

75.     Defendant Cevallos provided fabricated information to the U.S. Probation Officer to ensure a warrant was issued for Plaintiff's arrest.  Defendant Cevallos did so to harm Plaintiff and prevent him from complaining of his treatment by Defendants.

76.     Defendant Cevallos was acting in her official capacity as an NYPD officer when she subjected Mr. Matos Rivera to abuse of process, and Defendant City, as the employer of Defendant Cevallos, is liable for her actions under the doctrine of respondeat superior.

77.     As a result of Defendant's actions, Plaintiff suffered emotional pain, trauma, and humiliation.

78.     Plaintiff seeks compensatory and punitive damages from Defendant Cevallos, and compensatory damages and injunctive relief from Defendant City.

## ELEVENTH CAUSE OF ACTION: STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST DEFENDANTS KRYEZIU, CEVALLOS, MALAVET, PALMER, DOE 1, AND DOE 2)

79.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

80.     By using unreasonable force on and falsely arresting and imprisoning Plaintiff, and by failing to prevent other Defendants from doing so, Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 committed extreme and outrageous conduct sufficient to constitute the intentional infliction of emotional distress upon Plaintiff.

81.     As a result of Defendants' actions, Plaintiff suffered significant emotional pain, trauma, and humiliation.

82.     Plaintiff seeks compensatory and punitive damages from Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, and injunctive relief from Defendant City.

**TWELFTH CAUSE OF ACTION: STATE LAW NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

83.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

84.     By using unreasonable force on and falsely arresting and imprisoning Plaintiff, and by failing to prevent other Defendants from doing so, Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 were negligent in committing conduct that inflicted emotional distress upon Plaintiff.

85.     Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 were acting in their official capacity as NYPD officers when they negligently inflicted emotional distress upon Mr. Matos Rivera, and Defendant City, as the employer of Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, is liable for their actions under the doctrine of respondeat superior.

86.     As a result of Defendants' actions, Plaintiff suffered significant emotional pain, trauma, and humiliation.

87.     Plaintiff seeks compensatory damages from Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, Doe 2, and compensatory damages and injunctive relief from Defendant City.

**THIRTEENTH CAUSE OF ACTION: FAILURE TO INTERVENE UNDER**
**42 U.S.C. § 1983**
**(AGAINST DEFENDANTS KRYEZIU, CEVALLOS, MALAVET, PALMER, DOE 1, AND DOE 2)**

88.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

89.     Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 observed the unlawful conduct alleged herein and had an opportunity to intervene, but failed to do so.

90.     As a result of Defendants' actions, Plaintiff suffered significant physical and emotional pain, trauma, humiliation, and deprivation of his constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

91.     Plaintiff seeks compensatory and punitive damages from Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, and injunctive relief from Defendant City.

## FOURTEENTH CAUSE OF ACTION: STATE LAW FAILURE TO INTERVENE (AGAINST ALL DEFENDANTS)

92.     Plaintiff incorporates by reference the allegations in all preceding paragraphs.

93.     Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 had a duty to aid Plaintiff while he was in police custody.  Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 observed the unlawful conduct and had an opportunity to intervene, but failed to do so.

94.     Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2 were acting in their official capacity as NYPD officers when failed to intervene and aid Mr. Matos Rivera, and Defendant City, as the employer of Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, is liable for their actions under the doctrine of respondeat superior.

95.     As a result of Defendants' actions, Plaintiff suffered significant physical and emotional pain, trauma, and humiliation.

96.     Plaintiff seeks compensatory and punitive damages from Defendants Kryeziu, Cevallos, Malavet, Palmer, Doe 1, and Doe 2, and compensatory damages and injunctive relief from Defendant City.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Adan Matos Rivera, prays that this Court:

97.     Declare that Defendants' acts, practices, policies, customs, and/or omissions have deprived Plaintiff of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983; and the laws of the State of New York;

98.     Issue injunctions addressing excessive force by NYPD officers through training, supervision, investigation, prosecution, and discipline;

99.     Award compensatory damages for economic harm, pain and suffering, and emotional and mental distress to Plaintiff against the City and Defendants jointly and severally, together with interest and costs;

100.     Award punitive damages to Plaintiff in an amount to be determined at trial against Defendants, whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiff's rights, as set forth above;

101.     Order reasonable attorneys' fees and costs to be paid by Defendants pursuant to 42 U.S.C. § 1988; and

102.     Grant such other and further relief as the Court deems just and equitable.


Dated:   New York, New York
         January 16, 2023

Respectfully submitted,

**DEBEVOISE & PLIMPTON LLP**

By: _s/ John Gleeson_
    John Gleeson
    Laura J. Samuels
    Andrew Van Duyn
    66 Hudson Boulevard
    New York, New York 10001

(212) 909-6000
jgleeson@debevoise.com
ljsamuels@debevoise.com
amvanduyn@debevoise.com

*Attorneys for Plaintiff*